IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REBECCA CAROLYN SMITH,

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 6:15-cv-00383-CL

**REPORT & RECOMMENDATION**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Rebecca Carolyn Smith ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence and free of legal error, it should be **AFFIRMED**.

Page 1 – Report & Recommendation

## BACKGROUND

Plaintiff was born on February 13, 1977. Tr. 62. She has a 10th grade education and prior part-time work experience as a caretaker, cashier, receptionist, and waitress. Tr. 24, 199. On January 12, 2011, Plaintiff filed an application for benefits alleging disability since January 27, 2010 due to fibromyalgia, sciatica, scoliosis, ASD closer in heart, sinus arrhythmia, and stomach problems. Tr. 18, 62. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 18. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ) on January 10, 2013. Tr. 18, 36. On March 28, 2013, the ALJ issued a decision finding Plaintiff not disabled. Tr. 29. The Appeals Counsel denied Plaintiff's request for review, rendering the ALJ's denial the final decision of the Commissioner Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

      §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Page 3 – Report & Recommendation

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date. Tr. 20. At step two, the ALJ found Plaintiff suffered from severe impairments: "lumbar spine disorder (mild scoliosis, post laminectomy syndrome, and status post L4-5 laminectomy/discectomy) and heart condition (status post atrial defect repair with ongoing palpitations)." Tr. 20. At step three, the ALJ found, considered singly and in combination, Plaintiff's impairments did not meet or medically equal the severity of any listed impairments. Tr. 21.

Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). Tr. 22. She determined that Plaintiff could perform sedentary work with the following qualifications:

> [S]he is able to lift and carry up to 10 pounds; she is able to sit for 6 hours and stand/walk for 2 hours in an 8-hour workday with normal breaks; she would function best in a job that allows more sitting than standing during the course of an 8-hour workday whereby if she needed to sit, she would

>have the opportunity to do so; she has difficulty with any overhead reaching bilaterally; she is able to have only superficial interaction with the public because of stress; she should avoid constant interaction with her coworkers; she cannot be in an environment with smoke; she is unable to climb ladders, ropes, or scaffolds, she is unable to operate dangerous equipment or machinery, work at heights, or work in environments with temperature extremes (hot and cold); and she is able to engage in postural movements occasionally (e.g. stooping, squatting, kneeling, crouching, and crawling).

Tr. 22. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 27. Considering Plaintiff's age, education, experience, and RFC, the ALJ determined Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including addresser and semi-conductor wafer breaker. Tr. 27-28. Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, since the date of her application. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a

reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn*, 495 F.3d at 630; *see also Bray*, 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her testimony without providing clear and convincing reasons for doing so, and (2) rejecting the opinions of her treating physicians. The Court considers each allegation of error in turn.

### I. The ALJ Validly Discredited Plaintiff.

Plaintiff contends the ALJ improperly discredited her testimony. When gauging a claimant's credibility, an ALJ must engage in a two-step process. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if such evidence exists, barring affirmative evidence of malingering,[1] the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1283-84. Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence[;] effective medical treatment[;] medical noncompliance[;] inconsistencies in the claimant's testimony or between her testimony and her conduct[;] daily activities inconsistent with the alleged symptoms[;] and testimony from physicians and third parties about the nature,

---

[1] The ALJ found no evidence of malingering in this case.

Page 6 – Report & Recommendation

severity[,] and effect of the symptoms complained of." *Bowers v. Astrue,* No. 6:11–cv–583–SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012). An ALJ may also consider (1) "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid[,]" and (2) "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen,* 80 F.3d at 1284. A general assertion that the Plaintiff is not credible is insufficient. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's allegations. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). If the ALJ's credibility finding is supported by substantial evidence in the record, this Court may not engage in second-guessing. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms. Tr. 24. However, she found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. Tr. 24. The ALJ detailed six reasons for this determination. First, Plaintiff's descriptions of her disability suspiciously worsened after each application denial. Tr. 24. In 2010, months after a significant back surgery, Plaintiff reported that she cared for her young daughter, cleaned the house twice a week, and lifted things like the vacuum every day. Tr. 24. After her application was denied in 2011, Plaintiff represented that she was unable to do household chores, and struggled to dress or bath herself. Tr. 24. After her request for reconsideration was denied, Plaintiff stated that she needed a cane, walker, or wheelchair in order to ambulate. Tr. 24. Second, Plaintiff has a poor work history that existed long before she allegedly became disabled. Tr. 24. She earned less than $1,000 in most years since 1997. Tr. 24. Third, the ALJ identified multiple contradictory

statements regarding Plaintiff's medication usage and insurance history. Tr. 25. Plaintiff stated that she could not obtain medication due to lack of insurance coverage, and, conflictingly, that she could not stop taking medication long enough to work. Tr. 25. Moreover, Plaintiff lost her California insurance coverage when she voluntarily moved to Oregon without a back-up option. The ALJ found this choice belied the severity of Plaintiff's symptoms and need for treatment. Tr. 25. Fourth, the ALJ questioned the veracity of Plaintiff's statement that she heavily relied on her husband — who collects full disability benefits, presumably because he is unable to work — to perform household chores, care for their children, shop, and assist her with personal care. Tr. 25. Fifth, objective medical evidence did not substantiate Plaintiff's allegations of severe pain. Tr. 25. In a follow-up appointment after surgery, a doctor noted that Plaintiff was "doing quite well" with "markedly resolved" pain and "just a slight residual numbness over the left foot, but this is improving." Tr. 294. An MRI scan in February 2011 revealed "no evidence of a recurrent herniated disk." Tr. 373. Plaintiff's doctor was confident that Plaintiff "will do quite well with conservative treatment." Tr. 373. Sixth, the ALJ addressed numerous inconsistencies between Plaintiff's testimony, functional report, and treatment notes. For instance, Plaintiff testified that she is diabetic, but medical records indicate she is not. Tr. 25, 44, 489 ("She is not diabetic[.]"). Plaintiff sought emergency care for a cough and sore throat in April 2011 and described herself as "active." Tr. 25, 503. She returned to the ER in November 2011 to treat a wrist injury sustained while taking a heavy box down from a shelf above her head. Tr. 25-26, 496.

    Plaintiff does not directly contest any of the justifications outlined above. Instead, she appears to take issue with the ALJ's discussion of her daily activities. She argues that the ALJ failed to outline how these activities contradict other evidence on the record, or to consider whether they are indicative of abilities that are readily transferable to a competitive work

environment. Plaintiff is correct that the ALJ would have needed to engage in this analysis if she had found Plaintiff's daily activities undermined her allegations of disability. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (An ALJ can weigh a claimant's daily activities against her credibility only if they (1) contradict her other testimony or (2) constitute transferable work skills.). However, the ALJ did not weigh Plaintiff's daily activities against her and, therefore, had no reason to make these findings. Moreover, to the extent the ALJ referenced Plaintiff's daily activities in support of other reasons for discounting her testimony — for example, when discussing inconsistencies on the record, or possible exaggeration — the ALJ adequately cited and explained her concerns.

Even if the Court found the ALJ erred in weighing daily activities against Plaintiff, the ALJ's remaining reasons are sufficient to support the adverse credibility finding. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (the Court need not uphold all of an ALJ's reasons for discounting testimony in order to affirm the ALJ's ultimate conclusion). These undisputed reasons are specific, supported by substantial evidence, and qualify as clear and convincing under Ninth Circuit precedent. *Id.*; *Thomas*, 278 F.3d at 959 (in addition to finding no medical evidence to support the claimant's pain testimony, an ALJ properly weighed the claimant's poor work history and lack of candor against her credibility); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 2001) (an ALJ may discredit allegations based on specific findings of inconsistencies in the record and inadequately explained gaps in treatment). Plaintiff waived the ability to challenge them when she failed to mention them in her brief. *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived."). For these reasons, the Court should affirm the ALJ's adverse credibility finding.

## II.    The ALJ Reasonably Weighed the Medical Evidence.

When assessing an ALJ's treatment of medical evidence, the Ninth Circuit distinguishes between treating, examining, and non-examining physicians. In general, an ALJ must accord greater weight to a treating physician than a non-treating physician and to an examining physician than a non-examining physician. *Ghanim v. Colvin,* 763 F.3d 1154, 1160 (9th Cir. 2014). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted) (alterations in original). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Id.* When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is brief, conclusory, or unsupported by clinical findings. *Id.*

The record before the ALJ was comprised of conflicting medical opinions. As such, both sides agree that the lower "specific and legitimate" standard applies. Pl.'s Br., at 30; Def.'s Br., at 9. In addition to challenging the weight assigned to two treating physicians' opinions, discussed below, Plaintiff raises three general assignments of error regarding the ALJ's treatment of medical evidence. First, Plaintiff asserts the ALJ cherry-picked portions of opinions that supported her finding of no disability and overlooked parts that suggested the opposite. The Court does not agree. The ALJ referenced evidence that both supported and undermined Plaintiff's claim, recognized conflicts on the medical record, thoroughly reviewed the evidence, and set forth specific reasons for her weight assignments. *White v. Comm'r, Soc. Sec. Admin.,*

Page 10 – Report & Recommendation

572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."). Next, Plaintiffs states that the ALJ erroneously focused on Plaintiff's credibility when her providers did not. The Court notes that the ALJ did not cite concerns with Plaintiff's credibility as a reason for discounting medical evidence. Nevertheless, because the ALJ properly discredited Plaintiff, it would have been appropriate for the ALJ to do so to the extent the providers' opinions were based on Plaintiff's self- reports. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (An ALJ may reject a treating physician's opinion if it is largely based on self-reports of a claimant who has been properly discredited.). Third, Plaintiff contends that the ALJ erroneously failed to account for "all of the evidence" in Plaintiff's RFC and the hypothetical posed to the Vocational Expect. Pl.'s Br. At 31. However, inclusion of all evidence was not necessary. *Bayliss*, 427 F.3d at 1217-18 (affirming RFC that omitted limitations the ALJ found were not credible or supported); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."). The ALJ properly incorporated those conditions and impairments that she deemed to be credible and supported by the record.

### A. The ALJ Properly Weighed Dr. Moore's Opinions.

Dr. Phillip Moore, a cardiologist, indicated that Plaintiff had an atrial septal defect as well as palpitations, but that her prognosis was "good." Tr. 327. He opined that Plaintiff had "no" marked limitation of physical activity. Tr. 327-28. He estimated that Plaintiff could sit for at least six hours, and stand or walk for about four hours, in an eight hour workday. Tr. 329. Every few hours she would require a 15 minute break. Tr. 329. Dr. Moore stated that Plaintiff is "capable of low stress jobs." Tr. 328. He found her cardiac symptoms may frequently interfere

with her attention, and explained that stress plays a significant role in bringing about Plaintiff's palpitations. Tr. 327-28.

The ALJ assigned some weight to Dr. Moore's notes, but opted to create an RFC that was more deferential to Plaintiff. The ALJ explained that Dr. Moore may have overstated Plaintiff's abilities because he did not consider her back problems. Tr. 26. "[W]hile she might have been limited to light work because of her heart condition, the addition of her back disorder likely would have reduced her functional capacity further." Tr. 26. Accordingly, the ALJ departed from Dr. Moore's opinion, and limited Plaintiff to sedentary, not just light, work. Tr. 28.

Plaintiff contends the ALJ improperly rejected Dr. Moore's findings related to her concentration and need for breaks. However, it is not clear to the Court that the ALJ discredited either of these limitations. First, in addition to opining that Plaintiff's cardiac symptoms could "frequently" disrupt her attention, Dr. Moore found that stress played a "significant" role in bringing about those symptoms and Plaintiff was capable of work in low stress environments. Tr. 327-28. It was rational to interpret these three concurrent conclusions to mean that Plaintiff's symptoms would not be exacerbated in a low stress environment and thus would not interfere with her concentration to a debilitating degree. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). The ALJ honored this limitation by restricting Plaintiff to sedentary work and minimizing workplace interactions "because of stress." Tr. 22. Second, Dr. Moore stated Plaintiff would need to take 15 minute breaks "every few hours" at work. Tr. 329. The ALJ accounted for this limitation by noting that Plaintiff would require "normal breaks" in an eight hour workday. Tr. 22. Because the ALJ reasonably interpreted and incorporated both of these

limitations into Plaintiff's RFC, Plaintiffs' challenge should fail. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (finding an ALJ incorporated medical conclusions into a claimant's RFC and thus did not need to provide reasons for rejecting them).

### B. The ALJ Validly Discounted Dr. Keller's Opinions.

Dr. Thomas Keller, a pain specialist, examined Plaintiff once in March 2011. Tr. 384-88. In October 2011, he submitted an assessment in which he opined that Plaintiff could not work; could stand, walk, and sit for two hours a day at most; and could never climb, balance, stoop, kneel, crouch, craw, or reach. Tr. 485-87. Dr. Keller explained that Plaintiff is restricted by pain and numbness. Tr. 486. He noted that Plaintiff's medication causes sedation. Tr. 487.

The ALJ characterized Dr. Keller's opinion as "extreme[.]" Tr. 26. The ALJ noted that Dr. Keller's opinion was based on a single examination, and subsequent treatment notes did not reflect the same level of limitation. Tr. 26. The ALJ cited emergent care records that do not mention "severe leg or back pain" or indicate that Plaintiff required an assistive walking device. Tr. 26. The ALJ also contrasted Dr. Keller's opinion with Plaintiff's reported activities. For example, Dr. Keller opined in October 2011 that Plaintiff can "never" stoop, crouch, or reach in any direction. Tr. 487. A month later, Plaintiff reported to the ER after a metal object fell on her while she was "taking a heavy box down from above her head on a shelf." Tr. 496. The ALJ noted that Plaintiff could drive a car which required her to engage in "some measure of postural movements (e.g. bending) as well as reaching out and us[ing] her arms." Tr. 26. These proffered reasons are legally sufficient to discount Dr. Keller's contradicted opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (an ALJ reasonably discredited a provider whose recommendations were extreme, unsupported by the record, and inconsistent with the claimant's level of activity).

Plaintiff mounts three direct challenges to the ALJ's treatment of Dr. Keller's opinion. First, Plaintiff contends the ALJ "pointed to no other clinical evidence that Plaintiff could do a full range of sedentary work from an acceptable medical source or otherwise that supports her conclusory findings." Pl.'s Br., at 29. This argument mischaracterizes the record. Other medical providers opined that Plaintiff could do greater than sedentary work. The ALJ gave Plaintiff the benefit of the doubt, despite these medical opinions, when she determined Plaintiff's RFC. Even if the ALJ erred in doing so, reversal is not required because the assumptive error was positive, not prejudicial, for Plaintiff. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that an error does not require reversal where it is favorable to the claimant). Next, Plaintiff argues that the ALJ inappropriately excluded Dr. Keller's testimony "for lack of objective evidence of impairments not referenced by" Dr. Keller. Pl.'s Br., at 29. The Court is confused by this assertion. It is not clear what impairments Dr. Keller did not reference. The ALJ did not indicate that she was discrediting Dr. Keller's testimony on this basis. Third, Plaintiff states the ALJ "grossly ignored" Dr. Keller's opinion regarding the negative side effects of Plaintiff's medication. Pl.'s Br., at 30. This is not accurate. The ALJ explicitly acknowledged that Dr. Keller "stated that medications would affect" Plaintiff, but declined to assign significant weight to Dr. Keller's assessment for the legally valid reasons discussed above. Tr. 26. In sum, the Court should find that the ALJ set forth specific, legitimate reasons based on substantial evidence for discounting Dr. Keller's opinion testimony.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's final decision should be **AFFIRMED**.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections

are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of February 2016.

MARK D. CLARKE
United States Magistrate Judge